UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JEREMIAH SULLIVAN, in his fiduciary
Capacity as a Trustee for the POINTERS,
CLEANERS, & CAULKERS WELFARE,
PENSION & ANNUITY FUNDS, and as
President of the BRICKLAYERS AND
ALLIED CRAFTWORKERS LOCAL UNION
NO. 1, B.A.C.I.U., AFL-CIO; and the
TRUSTEES OF THE BRICKLAYERS AND
TROWEL TRADES INTERNATIONAL
PENSION FUND and the INTERNATIONAL
MASONRY INSTITUTE,

                              Plaintiffs,            **REPORT AND RECOMMENDATION**
                                                     **10 CV 3582 (NGG)(LB)**

              -against-

MARBLE UNIQUE CORP., MIROSLAW
KRULASKIK, and JOHN and/or JANE DOE
FIDUCIARY,

                              Defendants.
-----------------------------------------------------------X
BLOOM, United States Magistrate Judge:

      Plaintiffs Jeremiah Sullivan, in his fiduciary Capacity as a Trustee for the Pointers,

Cleaners, & Caulkers Welfare, Pension & Annuity Funds ("PCC FUNDS"), and as President of

the Bricklayers and Allied Craftworkers Local Union No. 1, B.A. C.I.U. AFL-CIO ("LOCAL

1"), and the Trustees of the Bricklayers and Trowel Trades International Pension Fund and the

International Masonry Institute (collectively "International Funds"), bring this civil action

against defendants Marble Unique Corp., Miroslaw Krulasik, and John and/or Jane Doe

Fiduciary, seeking to recover unpaid employee benefit fund contributions, dues and assessments,

and injunctive relief, pursuant to Sections 502 and 515 of the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor

Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.  Despite service of the

1

summons and complaint, defendants have failed to plead or otherwise defend this action. On March 15, 2011, plaintiffs moved for a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. The Honorable Nicholas G. Garaufis referred plaintiffs' motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted and that a default judgment should be entered against Marble Unique Corp. for: $86,337.14 in unpaid contributions; $14,971.98 in interest on outstanding contributions; $17,267.43 in liquidated damages on outstanding contributions; $6,650.66 in unpaid dues and assessments; $1,089.38 in interest on outstanding dues and assessments; $8,388.50 in attorney's fees; $817.63 in costs; and $1,725.00 in audit fees. It is further recommended that Miroslaw Krulasik should be held personally liable for damages to the PCC Funds and International Funds and that plaintiffs' request for injunctive relief should be granted in part and denied in part as set forth below.

BACKGROUND

The PCC Funds and International Funds (collectively "Funds") are jointly-trusteed, employee benefit plans within the meaning of Section 3(3) of ERISA and multiemployer plans within the meaning of Section 3(37) of ERISA. Docket entry # 1, Compl. ¶¶ 4-7. Plaintiff Jeremiah Sullivan is a trustee and fiduciary of the Funds. Id. ¶ 8. Local 1 is a labor organization within the meaning of 29 U.S.C. § 185 that represents employees in an industry affecting commerce as defined in 29 U.S.C. § 142(1) and 29 U.S.C. § 1002(12). Id. ¶ 5. Defendant Marble Unique Corp. is engaged in an industry affecting commerce, within the meaning of 29 U.S.C. § 185 and an employer within the meaning of ERISA, 29 U.S.C. §§ 1002(5) and 1145. Id. ¶ 10. Defendant Miroslaw Krulasik is an officer of Marble Unique Corp. Id. ¶ 11.

A collective bargaining agreement ("CBA") between Marble Unique Corp. and Local 1 obligates Marble Unique Corp. to submit monthly employer remittance reports, make contributions to the Funds, and pay dues and assessments to Local 1 based on the number of hours worked by employees. Id. ¶¶ 34-37. The CBA defines when remittance reports, contributions, and dues are timely submitted and the consequences for late payment, including the obligation to pay interest. Docket entry # 6, Dell Aff. ¶¶ 26-31.

Plaintiff's application for monetary damages is based on Marble Unique Corp.'s alleged failure to make required payments and submit remittance reports. Plaintiffs also seek to hold Miroslaw Krulasik personally liable for Marble Unique Corp.'s failure to comply with the CBA. Plaintiffs' application for injunctive relief requests a Court Order requiring Marble Unique Corp. to submit to an audit and produce all outstanding remittance reports, contributions, and dues within 15 days of the date of the order and to submit these items timely going forward. Finally, plaintiffs also request that the Court permit them to seek a supplemental judgment against Marble Unique Corp. based on the results of any Court-ordered audit.

Although plaintiffs served defendants on October 4, 2010, see docket entries # 2,3, defendants failed to appear or otherwise defend this action. The Court directed plaintiffs to take appropriate action and on March 15, 2011, plaintiffs requested that a default be entered against defendants and moved for default judgment. Docket entries # 4-7. The Clerk of Court noted defendants' default on the record. Docket entry # 8.

DISCUSSION

I.      Liability

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). "Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc., No. 08-CV-3168, 2009 WL 4929419, at *6 (E.D.N.Y. Oct. 6, 2009) (Pollak, M.J.)(citing Erwin DeMartino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

On a motion for default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). In determining whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Rolls-Royce PLC, 688 F. Supp. 2d at 153 (citation omitted).

The factual allegations in plaintiffs' complaint establish Marble Unique Corp.'s liability under Section 515 of ERISA, which provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Plaintiffs allege that Marble Unique Corp. failed to make contributions to the Funds in accordance with the CBA. Compl. ¶ 44. Marble Unique Corp.'s failure to make the required contributions constitutes a violation of ERISA.

Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Under Section 301 of the LMRA, an employer may be held liable for failing to pay assessments or failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement. See Brown v. C. Volante Corp., 194 F.3d 351, 354 (2d Cir. 1999); Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05-CV-1665, 2007 WL 3124612, at * 4 (E.D.N.Y. Oct. 23, 2007) (Mann, M.J.). As stated above, plaintiffs allege that Marble Unique Corp. failed to pay required dues and assessments to Local 1 as required by the CBA. This failure to pay dues and assessments constitutes a breach of the CBA, and thus, Marble Unique Corp. is liable under Section 301 of the LMRA.

As the factual allegations in plaintiffs' complaint, accepted as true, establish Marble Unique Corp.'s liability under Section 515 of ERISA and Section 301 of the LMRA, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted.

II.     Damages

It is well established that a default constitutes an admission of well-pleaded factual allegations in the complaint, except those relating to damages. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint, with respect to the amount

of the damages are not deemed true."); Greyhound Exhibit Group, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). However, the Court is not required to hold a hearing, as "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Louis, No. 06-CV-5924, 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (Ross, J.) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)). On a motion for default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

Plaintiffs support their claim for damages with the following documents: the declaration of Jeremiah Sullivan, the President of Local 1 and a Trustee and Administrator for PCC, detailing plaintiffs' calculation of damages; the declaration of plaintiffs' attorney, Caroll G. Dell further detailing plaintiffs' calculation of damages; the relevant trust and collective bargaining agreements; an audit report covering July 1, 2006 through June 30, 2008; and Marble Unique Corp.'s remittance reports for the periods March 2009 through August 2009 and January 2010 through February 2010.[1] These submissions provide a sufficient basis for the Court to determine damages.[2] Accordingly, a hearing on damages is not necessary.

Section 502 of ERISA sets forth the damages that are recoverable for an employer's

---

[1] Plaintiffs do not employ the formulas set forth in the CBA to estimate additional monthly contributions. Instead, they rely only on the figures in the audit report and remittance reports received from defendants.

[2] Plaintiffs' counsel did not include a memorandum of law as required by Local Civil Rule 7.1. Failure to do so in the future may lead to sanctions, including denying the motion in its entirety or a reduced fee award. See Gesauldi v. Mack Excavation & Trailer Serv., Inc., No. 09-CV-2502, 2010 WL 985269, at * 2 n.1 (E.D.N.Y. Feb. 12, 2010).

failure to remit contributions as required by Section 515 of ERISA. Section 502 provides that:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>
>> (A) the unpaid contributions,
>> (B) interest on the unpaid contributions,
>> (C) an amount equal to the greater of –
>>> (i) interest on the unpaid contributions, or
>>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

A.      Unpaid Contributions

1.      July 1, 2006 through June 30, 2008

Plaintiffs seek unpaid contributions to the Funds for the period from July 1, 2006 through June 30, 2008. Plaintiffs retained an auditing company to conduct an audit of Marble Unique Corp.'s books and records for this time period and based on its report, $7,867.01 in delinquent contributions are owed for this time period. "[T]he opinion of an auditor is a sufficient basis for an award of a specific amount of damages," if it is "adequately explained and credited by the Court." Philip Gen. Constr., 2007 WL 3124612, at * 10. See also Grabois v. Action Acoustics, Inc., No. 94-CV-7386, 1995 WL 662127, at * 5 n.3 (S.D.N.Y. Nov. 9, 1995) (Buchwald, J.) ("Courts have found it appropriate to rely on an audit or an auditor's opinion to prove that defendant employers did not make required contributions to funds."). Here, the Trustee of the PCC Funds and President of Local 1 has affirmed that the auditing company was hired to examine Marble Unique Corp.'s "[b]ooks and records, including employer payroll records and

tax records for the period July 1, 2006 through June 30, 2008." Docket entry # 5, Sullivan Aff. ¶ 27. The audit report states that it is based on the accounting and payroll records of Marble Unique Corp., and applies various rates to the hours worked by different employees set forth in pages titled "Gross Delinquency Schedule" and "Supporting Schedule of Payroll Omissions." See Dell. Aff., Ex. N. The Court credits this report and has verified the accuracy of the rates and the audit company's calculations. See Philip Gen. Constr., 2007 WL 3124612, at * 10. (crediting report accompanied by explanation of the documentary basis for the report, after verifying the auditor's calculations).

      2.    July 1, 2008 to present

The Funds' auditor was "unable to complete" an audit for the period July 1, 2008 to present. Dell Aff. ¶ 51. However, based on defendants' remittance reports for the periods March 2009 through August 2009 and January 2010 through February 2010, plaintiffs calculate the unpaid contributions for those periods of time as follows:

| Month | Unpaid Contribution to PCC Funds | Unpaid Contributions to International Funds |
|---|---|---|
| March 2009 | $4,574.92 | |
| April 2009 | $9,868.73 | |
| May 2009 | $12,746.82 | |
| June 2009 | $9,794.15 | |
| July 2009 | $13,260.56 | |
| August 2009 | $9,788.07 | |
| January 2010 | $10,371.47 | $881.01 |
| February 2010 | $6,617.01 | 567.39 |
| Total | $77,021.73 | 1,448.40 |

Dell Aff., Exs. H, P, & Q. The Court has reviewed plaintiffs' calculation of unpaid contributions for these periods of time and it is correct.

Accordingly, it is respectfully recommended that plaintiffs should be awarded a total of

$86,337.14 in unpaid contributions to the Funds from July 1, 2006 to present.

B.     Interest on Unpaid Contributions

Plaintiffs seek interest on unpaid contributions due to the Funds from the first day of the month when payment was due through February 1, 2011.  Section 502 of ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided for under the plan, or if none, the rate prescribed under section 6621 of Title 26."  29 U.S.C. § 1132(g)(2).  Pursuant to the Agreement, the applicable interest rate on delinquent contributions to the Funds is 10% per year.  Sullivan Aff., Ex. B, Art. XV § 7(f) at p. 39.  Plaintiffs calculate the interest due on unpaid contributions to the Funds, assessed from February 1, 2011, the approximate date of the filing of the instant application, and multiplied by a per diem rate.

1.     July 1, 2006 through June 30, 2008

For the time period July 1, 2006 through June 30, 2008, plaintiffs calculate interest owed the Funds as follows:

| Month | Unpaid Contributions | Days Late (through 2/1/2011) | Daily Interest Rate (10%/365) | Interest Due |
|---|---|---|---|---|
| July 2006 | $1,256.25 | 1631 | .0002739726 | $561.35 |
| August 2006 | $918.75 | 1600 | .0002739726 | $402.74 |
| January 2007 | $150.00 | 1447 | .0002739726 | $59.47 |
| May 2007 | $790.40 | 1327 | .0002739726 | $287.36 |
| June 2007 | $956.80 | 1297 | .0002739726 | $339.99 |
| October 2007 | $168.00 | 1174 | .0002739726 | $54.04 |
| November 2007 | $2,068.07 | 1144 | .0002739726 | $648.18 |
| December 2007 | $1,577.05 | 1113 | .0002739726 | $480.89 |
| January 2008 | $650.42 | 1082 | .0002739726 | $192.81 |
| February 2008 | $828.48 | 1053 | .0002739726 | $239.01 |
| March 2008 | $766.20 | 1022 | .0002739726 | $214.54 |
| April 2008 | $880.96 | 992 | .0002739726 | $239.43 |
| May 2008 | $429.34 | 961 | .0002739726 | $113.04 |
| June 2008 | $28.00 | 931 | .0002739726 | $7.14 |
| Total | | | | $3,839.99 |

Dell Aff. ¶ 55; Ex. O.

    2.    July 1, 2008 to present

For contribution delinquencies from July 1, 2008 to date, plaintiffs calculate interest as follows:

| Month | Unpaid PCC Fund Contributions | Days Late (through 2/1/2011) | Daily Interest Rate (10%/365) | Interest Due PCC Funds |
|---|---|---|---|---|
| March 2009 | $4,574.92 | 657 | .0002739726 | $823.49 |
| April 2009 | $9.868.73 | 627 | .0002739726 | $1,695.26 |
| May 2009 | $12,746.82 | 596 | .0002739726 | $2,081.40 |
| June 2009 | $9,794.15 | 566 | .0002739726 | $1,518.76 |
| July 2009 | $13,260.56 | 535 | .0002739726 | $1,943.67 |
| August 2009 | $9,788.07 | 504 | .0002739726 | $1,351.56 |
| January 2010 | $10,371.47 | 351 | .0002739726 | $997.37 |
| February 2010 | $6,617.01 | 323 | .0002739726 | $585.56 |
| Total | | | | $10,997.06 |

| Month | Unpaid Int'l Fund Contributions | Days Late (through 2/1/2011) | Daily Interest Rate | Interest Due Int'l Funds |
|---|---|---|---|---|
| January 2010 | 881.01 | 351 | .0002739726 | 84.72 |
| February 2010 | 567.39 | 323 | .0002739726 | 50.21 |
| Total | | | | 134.93 |

Dell Aff. ¶ 56; Exs. P & Q. The Court has reviewed plaintiffs' calculation of interest on unpaid contributions to the Funds and it is correct. Accordingly, it is respectfully recommended that plaintiffs should be awarded a total of $14,971.98 in interest on unpaid contributions to the Funds from July 1, 2006 to the present.

    C.    Liquidated Damages

Plaintiffs seek liquidated damages on unpaid contributions due to the Funds. Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due

on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements.  29 U.S.C. § 1132(g)(2)(C).  Here, the CBA provides for liquidated damages in the amount of twenty percent of the unpaid contributions.  Dell Aff. ¶ 58; Sullivan Aff. Ex. B, Art. XV, § 7(f) at p. 39.  Plaintiffs assert that liquidated damages amount to $17,987.77.  Dell Aff. ¶ 58.  However, 20% of 86,337.14 is $17,267.43.  Accordingly, it is respectfully recommended that the Funds be awarded $17,267.43 in liquidated damages.

        D.        Unpaid Dues and Assessments

Plaintiffs also seek dues and assessments owed by defendants to BAC Local # 1 Defense and Organizing Fund, Promotion Fund, Dues Check-off, BAC Local # 1 BAC Political Action Committee, Labor Management Relations Committee, and Joint Apprenticeship Training, which are entities administered by Local 1.  Docket entry # 9, Suppl. Aff. of Jeremiah Sullivan ¶ 5.  In addition, plaintiffs seek dues and assessments owed to Dues Check-Off for the BAC International and the International BAC PAC, which are administered by the International Union of the Bricklayers and Allied Craftworkers ("International Union").  Id. ¶ 6.  Marble Unique Corp.'s obligation to make these payments and the applicable rates of payment per employee per hour of work are set forth in the CBA.  Dell Aff. ¶ 24; Sullivan Aff., Ex. A at pp. 22-37; Ex. B at pp. 18-36.  For the audited period, the Court has verified that the application of these rates to the hours identified in the audit and finds the calculations therein are mathematically accurate.  The Court has also reviewed the remittance sheets from March 2009-August 2009 and January 2010-February 2010 and tallied the amount of dues and assessment owed for each hour of employee work for these time periods.  I find that plaintiffs' calculation of dues and assessments for these time periods is also correct.  Accordingly, I respectfully recommend that plaintiffs be awarded

$6,560.66 for unpaid dues and assessments.

E.     Interest on Unpaid Dues and Assessments

"An award of prejudgment interest for LMRA claims … is permitted in a court's discretion and at a rate within that court's discretion." Lanzafame v. Dana Restoration, Inc., No. 09-CV-873, slip copy, 2011 WL 1100111, at * 4 (E.D.N.Y. Mar. 22, 2011) (Vitaliano, J.). "In awarding interest, a court may look to state law to determine an appropriate rate." Id. Sections 5001 and 5004 of the New York Civil Practice Law and Rules provide for a nine percent per annum pre-judgment interest award. This is an appropriate rate for interest on unpaid dues and assessments owed to a union under a CBA. See e.g., Lanzafame v. Toquir Contracting, Inc., 545 F. Supp. 2d 255, 258 (E.D.N.Y. 2007); Bricklayers Ins. & Welfare Fund v. Topline Constr., Inc., No. 03-CV-487, 2006 WL 3337509, at * 5 (E.D.N.Y. Sept. 6, 2006) (Go, M.J.). Plaintiffs calculate the interest on Local 1 unpaid dues and assessments as follows:

| Month | Unpaid Dues and Assessments | Days Late (through 2/1/2011) | Daily Interest Rate (9%/365) | Interest Due |
|---|---|---|---|---|
| July 2006 | $118.59 | 1631 | .0002465753 | $47.69 |
| August 2006 | $86.73 | 1600 | .0002465753 | $34.21 |
| January 2007 | $14.16 | 1447 | .0002465753 | $5.05 |
| May 2007 | $142.88 | 1327 | .0002465753 | $46.75 |
| June 2007 | $172.96 | 1297 | .0002465753 | $55.31 |
| October 2007 | $29.40 | 1174 | .0002465753 | $8.51 |
| November 2007 | $203.43 | 1144 | .0002465753 | $57.38 |
| December 2007 | $162.20 | 1113 | .0002465753 | $44.51 |
| January 2008 | $64.92 | 1082 | .0002465753 | $17.32 |
| February 2008 | $78.32 | 1053 | .0002465753 | $20.34 |
| March 2008 | $70.74 | 1022 | .0002465753 | $17.83 |
| April 2008 | $81.36 | 992 | .0002465753 | $19.90 |
| May 2008 | $39.93 | 961 | .0002465753 | $9.46 |
| June 2008 | $2.64 | 931 | .0002465753 | $0.61 |
| March 2009 | $303.95 | 657 | .0002465753 | $49.24 |
| April 2009 | $658.44 | 627 | .0002465753 | $101.80 |
| May 2009 | $849.80 | 596 | .0002465753 | $124.89 |
| June 2009 | $653.66 | 566 | .0002465753 | $91.23 |
| July 2009 | $861.04 | 535 | .0002465753 | $113.59 |

| Month | | | | |
|---|---|---|---|---|
| August 2009 | $633.33 | 504 | .0002465753 | $78.71 |
| January 2010 | $675.17 | 351 | .0002465753 | $58.43 |
| February 2010 | $437.39 | 323 | .0002465753 | $34.84 |
| Total | | | | $1,037.60 |

Dell Aff. at Exs. O & P.

Plaintiffs calculate the interest on unpaid dues and assessments to the International Union as follows:

| Month | Unpaid Dues and Assessments | Days Late (through 2/1/2011) | Daily Interest Rate (9%/365) | Interest Due |
|---|---|---|---|---|
| January 2010 | $372.04 | 351 | .0002465753 | 32.20 |
| February 2010 | $245.87 | 323 | .0002465753 | 19.58 |
| Total | | | | 51.78 |

Dell Aff. Exs. P, & Q.

The Court has reviewed these calculations and they are accurate. Accordingly, I respectfully recommend that plaintiffs be awarded $1,089.38 in interest on unpaid dues and assessments.

III.     Personal Liability of Miroslaw Krulasik

A.     Liability as a Signatory to the CBA

Plaintiffs assert that Krulasik is personally liable in his individual capacity for all amounts owned by Marble Unique Corp.  Although federal law governs disputes arising under ERISA and the LMRA, state law governs whether a collective bargaining agreement imposes personal liability on an individual signatory.  Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co., 301 F.3d 50, 53 (2d Cir. 2002) (LMRA); Cement & Concrete Workers Dist. Council v. Lollo, 35 F.3d 29, 35 (2d Cir. 1994) (ERISA).  Under New York law, an agent who signed on behalf of a corporation will not be individually bound "unless there is clear and

explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of [the corporation]." Lerner v. Amalgamated Clothing & Textile Workers Union, 938 F.3d 2, 5 (2d Cir. 1991). This requirement "guards against the risk that lengthy and formulaic contracts will lead unwary signatories to unintentionally assume personally liability," especially since "modern business often occurs between widely held, impersonal corporations, of which signatories only own a small stake." Jacobson v. Citi-Wide Elec. Corp., No. 03-CV-263, 2008 WL 4491374, at * 2 (E.D.N.Y. Sept. 30, 2008) (Irizarry, J.).

As such, a finding of personal liability is "rare:" there must be "overwhelming evidence of the signatory's intention to assume personal liability." Thomsen Constr. Co., 301 F.3d at 53. To ascertain the intent of the signatory, the Court considers (1) the length of the contract, (2) the location of liability provision(s) in relation to the signature line, (3) the presence of the signatory's name in the agreement itself, (4) the signatory's role in the corporation, and (5) the nature of the negotiations leading to the contract. Id. Additional "indicia of a signatory's intent to be personally bound include the explicitness of the liability clause, the compositional elements of the signature page, and whether the signatory signed the agreement twice – once in his or her personal capacity and once in his or her professional capacity." Philip Gen. Constr., 2007 WL 3124612, at * 6.

Krulasik is an officer of Marble Unique Corp., Compl. at ¶ 11, and signed and remitted checks to the Funds on behalf of Marble Unique Corp, see Sullivan Aff., Ex. D. Krulasik signed both the 2004 Memorandum that extended the 2000-2004 CBA for another four years and the 2008 CBA. The signature page on each of these documents reads as follows:

> The Individual signing on behalf of the Employer hereby affixes his signature in a dual capacity both on behalf of himself and on behalf of the Employer and represents by his signature his authority to bind himself, the Employer, and the principals and members thereof. The person signing on behalf of the Employer also agrees to be personally

bound by and to assume all obligations of the Employer provided for in the Agreement:

| | |
|---|---|
| _____ | _____ |
| Name of Employer | Printed Name of Individual |
| By:_____ | _____ |
| Officer Signature | Signature of Individual |
| _____ | _____ |
| Corporate Address | Individual Address |
| _____ | _____ |
| Telephone Number | Individual Telephone Number |
| _____ | _____ |
| Federal I.D. Number | Social Security Number |

Sullivan Aff., Ex. B at p. 68; Ex. C at p. 3.  In the signature page to the 2004 Memorandum, Krulasik put his own name down as "Employer" and "Individual" and signed on the lines above "Officer Signature" and "Signature of the Individual."  In the 2008 CBA, Krulasik listed "Marble Unique" as the "Name of Employer," printed his own name as "Individual," but signed only the space above "Officer Signature," leaving the space above "Signature of Individual" blank. Krulasik completed the remainder of the blank spaces in both the 2004 Memorandum and the 2008 CBA.

       1.      Length of the Contract

"The Second Circuit has observed that the shorter the contractual document, the less likely it will be a 'trap for an unwary signatory.'"  <u>Philip Gen. Constr.</u>, 2007 WL 3124612, at * 7.  The 2008 CBA is 74 pages and the 2004 Memorandum, which itself is only a three page document, incorporates a 60-page document.  While the Second Circuit has upheld a personal liability provision in a 55 page CBA,  <u>Lollo</u>, 35 F.3d at 35, the greater length of the 2008 CBA and the fact that the 2004 Memorandum incorporates an entirely separate 60-page CBA weighs slightly against a finding of personal liability.  <u>Id.</u> ("the one-page document signed by [defendant] incorporates the terms of a CBA that is 78 pages long, and as such, this factor

weighs against imposing personal liability on [defendant]").  See also Lanzafame v. Dana Restoration, Inc., No 09-CV-0873, 2010 WL 6267657, at * 5 (E.D.N.Y. Aug. 12, 2010) (Orenstein, M.J.) ("extremely long" 55-page boilerplate contract weighed against a finding of personal liability).

2.     The Liability Clause

The Second Circuit has held that the precise liability clause at issue here "unequivocally fixes personal liability on the signatory." Lollo, 45 F.3d at 35.  While the explicitness of the instant liability clause, as well as its position directly above the signature lines, weigh in favor of finding personal liability, see id.; accord Mason Tenders Distr. Council Welfare Fund v. ITRI Brick & Concrete Corp., No 96-CV-6754, 1997 WL 678164, at * 16 (S.D.N.Y. Oct. 31, 1997) (Peck, M.J.), this factor must be assessed in conjunction with the other factors, see Dana Restoration, Inc., 2010 WL 6267657, at * 5,6 (finding no personal liability despite same liability clause herein).

3.     Presence of the Signatory's Name

Although Krulasik's name is not in the text of the agreement, he handwrote it above his signature.  This factor weighs somewhat in favor of finding individual liability.  Lollo, 35 F.3d 34 (finding personal liability where, in addition to other factors, defendant's name was written above the signature line, even though defendant's name was not in the text of contract).

4.     Krulasik's Role in the Corporation

Plaintiffs state that Krulasik is an "officer" of Marble Unique Corp. and provided checks to the PCC Funds that he signed on behalf of Marble Unique Corp.  While Krulasik's position "alone does not weigh in either direction under the circumstances presented here," Philip Gen. Constr., 2007 WL 3124612, at * 7 (citing Lerner, 938 F.2d at 5 (president of company not

personally liable); Thomsen, 301 F.3d at 54 (same)); accord Mason Tenders Distr. Council v. JNG Constr. Ltd., No. 00-CV-1032, 2003 WL 22999453, at * 5 (S.D.N.Y. Dec. 19, 2003) (Daniels, J.) ("Even if [defendant] is the secretary of the company, which appears to be the title he used when he signed …, there is still no evidence that he is a controlling corporate official."), the fact that he is the officer who signed a number of checks to the Funds does weigh slightly in favor of finding personal liability.

5.      Nature of Negotiations Leading to the Contract

Plaintiffs' failure to allege or produce any evidence of the nature of the negotiations related to the personal liability provision weighs heavily against finding intent to assume personal liability.  See Mason Tenders Dist. Council Welfare Fund v. M.A. Angeliades, Inc., No. 05-CV-8211, 2007 WL 4208587, at * 14 (S.D.N.Y. Nov. 20, 2007) (Sand, J.) (even where defendant signed the agreement twice and all other factors weighed in favor of finding personal liability, the court could not find personal liability where evidence revealed that "the personal liability clauses were … not the subject of *any* negotiation or discussion.").  See also Philip Gen. Constr., 2007 WL 3124612, at * 7 (failure to proffer evidence or allegations regarding the negotiations weighs against a finding of personal liability); Mason Tenders Distr. Council Welfare Fund v. A.G.I. Inc., No. 03-CV-1238, 2005 WL 1565831, at * 4 (S.D.N.Y. June 8, 2005) (Fox, M.J.) (same).

6.      Number of Signatures

Krulasik signed the 2004 Memorandum both in his official and personal capacity. Signing the 2004 Memorandum twice weighs in favor of finding Krulasik personally liable under the 2000-2004 CBA, which was extended until 2008 by the 2004 Memorandum.  However, Krulasik signed the 2008 Agreement only once in his official capacity, leaving the space above

"Individual Signature" blank. "[T]he appearance of only one signature, especially when that signature is in [defendant's] official capacity" weighs against a finding of personal liability. Thomsen Constr. Co., 301 F.3d at 54. Accordingly, this factor weighs against a finding personal liability for the 2008 CBA.

In balancing these factors, I find that the evidence regarding whether Krulasik intended to superadd personal liability to that of Marble Unique is close. However, in light of the "presumption against individual liability" in ERISA and LMRA cases, Lerner, 938 F.3d at 3, plaintiffs have failed to demonstrate that this is one of the "rare" cases in which there is the requisite "*overwhelming* evidence of the signatory's intention to assume personal liability," Thomsen Constr. Co., 301 F.3d at 53 (emphasis added). Accordingly, I respectfully recommend that the Court decline to hold Krulasik personally liable on the basis of his signature on the 2008 CBA and 2004 Memorandum.

B.      Liability as Fiduciary

Plaintiffs also assert that Krulasik should be held personally liable as a fiduciary to the Funds. "[A] fiduciary of an ERISA plan may be personally liable for a breach of a duty owed to the plan." Finkel v. Romanowicz, 577 F.3d 79, 82 n.4 (2d Cir. 2009). Under the statute, a "fiduciary" is defined as a person who "exercises any discretionary authority or discretionary control respecting the management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). In order to establish that a person is personally liable as a fiduciary of the plan, plaintiffs must prove "both that (1) the unpaid contributions were plan assets and (2) [the individual] exercised a level of control over those assets sufficient to make him a fiduciary." In re Halpin, 566 F.3d 286, 289 (2d Cir. 2009).

"[I]n the absence of provisions to the contrary in the relevant plan documents, unpaid

contributions are not assets of the plan." Id. at 287.  See Philip Gen. Constr., 2007 WL 3124612, at * 5 ("Delinquent contributions to a benefit fund are fund assets if so defined in the agreement creating the fund.") accord Sheet Metal Workers' Nat'l Pension Fund v. Ctr. Design Sys. Inc., No. 08-CV-968, 2010 WL 3522810, at * 4 (E.D.N.Y. May 25, 2010) (Tomlinson, M.J.).  Here, the trust documents establishing the Pension Fund, Welfare Fund, and Annuity Fund provide that the "assets of the Trust Fund shall not revert or be used for or inure to the benefit of any of the Employers …" and that "all contributions required from an Employer shall, after their due date and until their payment of in full by the Employer to the Trust Fund, be deemed to constitute a trust fund in the possession of such Employer; and said Employer shall be responsible and liable therefore as a fiduciary." See Sullivan Aff., Ex. E Agreement and Declaration of Trust, Pension Fund Art. II, §2 and Art. III, § 3; Agreement and Declaration of Trust, Welfare Fund, Art. II, § 2 and Art. III, § 3; Agreement and Declaration of Trust, Annuity Fund, Art. II, § 2 and Art. III, § 3. Similarly, the Restated Agreement and Declaration of Trust, International Pension Fund, provides that "[t]itle to all monies paid into and/or due and owing the Trust Fund shall be vested in and remain exclusively in the Trustees of the Fund." Id., The Restated Agreement and Declaration of Trust, International Pension Fund, May 21, 2003 Amend. Art. IV, § 4(a). Accordingly, these agreements, which are referenced in the CBAs, establish that "due but unpaid contributions" to the Welfare, Annuity, Pension, and International Pension Funds "constitute plan assets." Sheet Metal Workers' Pension Fund, 2010 WL 3522810, at * 4.  See also Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Manhattan Plumbing Corp., No. 08-CV-3036, 2010 WL 456870, at * 2 (E.D.N.Y. Feb. 3, 2010) (Block, J.); Philip Gen. Constr., 2007 WL 3124612, at * 5.

The remaining issue is whether Krulasik is a fiduciary. "Congress intended ERISA's

definition of fiduciary to be 'broadly construed.'" <u>LoPresti v. Terwilliger</u>, 126 F.3d 34, 40 (2d Cir. 1997). However, "[u]nlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." <u>Id.</u> Accordingly, "'management or disposition' of ERISA plan assets refers to the common transactions dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on." <u>Finkel</u>, 577 F.3d at 86. Thus, beyond the authority to sign checks and defendant's position, an ERISA fiduciary must have plan management authority or responsibility for activities such as selecting investments, exchanging instruments, or determining the sequence or whether the company's creditors would be paid. <u>Id.</u>

Plaintiffs' complaint alleges that Krulasik "exercised dominion and control respecting *management* or disposition of plan assets (i.e. contributions)." Compl. ¶ 13 (emphasis added). Plaintiffs also submit Marble Unique Corp. checks signed by Krulasik and made out to the "PCC Benefit Funds" from 2007 through 2010. Sullivan Aff. Ex. D. It is undisputed that Krulasik's residence is "where Marble Unique conducts business." Compl. ¶ 11. The Court also notes that after listing "46 E 52 Str. Bayonne 07002" as Marble Unique Corp.'s corporate address on the 2008 CBA, Krulasik wrote "SAME" on the line for his "Individual Address."[3] In light of the undisputed allegation in the complaint that Krulasik "enjoyed authority or control of the management of the …plan assets," <u>Finkel</u>, 577 F.3d at 86, and the evidence before the Court, I find that Krulasik was a plan fiduciary as to the Welfare, Annuity, Pension, and IPF Funds. <u>See</u> <u>Sheet Metal Workers' Pension Fund</u>, 2010 WL 3522810, at * 4 (allegations that defendant exercised control over activities and operations of the corporation and determined whether employer contributed to plan and that defendant signed all checks for the corporation were

---

[3] In the 2004 Memorandum, Krulasik listed himself as "Employer" and "46 E 52 Str Bayonne 07002" as his "Individual Address."

sufficient to establish personal fiduciary liability); <u>Philip Gen. Constr.</u>, 2007 WL 3124612, at * 5 (allegations that defendant had authority and control over payment of the required contributions and commingled plan assets and defendants' assets sufficiently established personal liability as a fiduciary).

Accordingly, I respectfully recommend that Krulasik should be held personally liable as a fiduciary for the unpaid contributions to the Funds, as well as the corresponding interest, liquidated damages, attorney's fees and costs, as set forth herein.[4]

IV.     Fees and Costs

A.     Attorney's Fees

Plaintiffs seek attorney's fees under Section 502 of ERISA. An award of attorney's fees under Section 502 of ERISA is mandatory. <u>See</u> 29 U.S.C. § 1132(g)(2) ("the court shall award . . . reasonable attorney's fees"); <u>Labarbera v. Clestra Hauserman, Inc.</u>, 369 F.3d 224, 226 (2d Cir. 2004). "The determination of an appropriate award of attorney's fees under ERISA 'lies within the sound discretion of the district judge.'" <u>Trs. of the Local 1034 I.B.T. Ins. Trust Fund v. R&L Livery, Inc.</u>, No. 09-CV-4442, 2010 WL 3613967 at * 3 (E.D.N.Y. Aug. 17, 2010) (Azrack, M.J.) (quoting <u>DeVito v. Hempstead China Shop, Inc.</u>, 831 F. Supp. 1037, 1043 (E.D.N.Y. 1993)). The district court should determine the "presumptively reasonable fee" for an attorney's services by looking to "what a reasonable, paying client would be willing to pay." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 183-84 (2d Cir.

---

[4] Plaintiffs have not established that Krulasik can be held liable for dues and assessments as an ERISA fiduciary of plan assets. Additionally, union dues are not among the obligations that can be enforced under New York Lien Law. <u>Eklecco v. Iron Workers Locals 40, 361 & 417 Union Sec. Funds</u>, 170 F.3d 353, 357 (2d Cir. 1999). As I recommend that Krulasik should be held liable as an ERISA fiduciary for unpaid contributions to the Funds, the Court need not address plaintiffs' argument, which lacks any analysis or citation, that Krulasik is also personally liable as a fiduciary to a trust created by New York Lien law.

2008). The "presumptively reasonable fee" is calculated "as a product of a reasonable hourly rate and a reasonable number of hours engaged in litigating the matter." <u>Trs. of the Local 1034 I.B.T. Ins. Trust Fund</u>, 2010 WL 3613967, at *9 (citing <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u>, 522 F.3d at 183-184).

In determining the reasonable fee for a particular case, "[t]he Court should rely on reasonable hourly rates approved by other courts in the District and its own familiarity with the prevailing rates in its District." <u>Trs. of the Local 813 I.B.T. Ins. Trust Fund v. Sprint Recycling, Inc.</u>, No. 09-CV-04435, 2010 WL 3613839, at * 4 (E.D.N.Y. Aug. 6, 2010) (Reyes, M.J.). Plaintiffs seek to recover the legal fees of attorneys Vincent O'Hara, Carol Dell, and Jessica Dubuss, as well as several paralegals. Dell Aff. ¶¶ 71-73. Plaintiffs were billed at $225 per hour for the work performed by firm members Mr. O'Hara and Mr. Dell, who have 30 and 10 years respectively of labor and employee benefit law experience. <u>Id.</u> ¶ 71-74. Given their level of experience, the Court finds that the rate charged is reasonable for Mr. O'Hara and Ms Dell. <u>See Trs. of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.</u>, No. 07-CV-00656, 2007 WL 4324019, at *15-16 (E.D.N.Y. Oct. 24, 2007) (Matsumoto, J.) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $375 for partners.").

Plaintiffs were billed $165 per hour for the work performed by Ms. Dubuss. Dell Aff. ¶¶ 73-74. Ms. Dubuss is an associate at the firm who has practiced labor and employee benefits law since 2010. <u>Id.</u> "Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for paralegals." <u>Gesualdi v. C.F.I. Assocs. Inc.</u>, No. 09-CV-5454, 2011 WL 1322315, at * 9 (E.D.N.Y. Mar. 10, 2011) (Orenstein, M.J.) (collecting cases). Accordingly, the Court finds that the rate charged per hour of Ms. Dubuss's work is appropriate.

Plaintiffs were billed $85 for work performed by five paralegals on this case. Dell Aff. ¶ 74. This hourly rate is greater than rates typically awarded for legal assistants or paralegals on ERISA default cases in this district. See Finkel v. Millenium Fire Servs. LLC, slip copy, 2011 WL 866995, at * 18 (E.D.N.Y. Feb. 16, 2011) (Pollak, M.J.) (citing cases finding $75-$80 reasonable). As plaintiffs submit no justification for a higher hourly rate in this case, the Court recommends that the paralegals' rate should be reduced to $80 per hour. Dana Restoration Inc., 2010 WL 6267657, at * 12 ("[a]bsent any explanation for adopting the high end of the range," the court saw "no reason why a paying client would agree to" an $80 per hour rate for paralegals, and recommended an hourly rate of $70).

Having determined the reasonable hourly rates to be used in this case, the Court now turns to the reasonableness of the hours billed in this matter. See e.g., Finkel v. Metro. Sign & Maint. Corp., No. 09-CV-4416, 2010 WL 3940448, at * 40-41 (E.D.N.Y. Aug. 12, 2010) (Pollak, M.J.). The contemporaneous time records submitted by plaintiffs reflect that Mr. O'Hara worked for .4 hours, Ms. Dell worked for 10.4 hours, Ms. Dubuss worked for 25.3 hours, and paralegals worked for a total of 26.7 hours. Dell Aff., Ex. S. The work performed included reviewing documents, communicating with the Funds, drafting and revising the complaint, calculating damages, and preparing the instant motion. Id. Having carefully reviewed the time records, the amount of time expended on this ERISA action is reasonable, except for the following:

- 4.4 Hours for a paralegal to prepare the summonses, backs, notices, waivers, and civil cover sheet. This is excessive and is reduced to 2 hours.
- 1.5 hours for a paralegal to prepare cover letters to process server and pleadings for service on defendants. This is reduced to .5 hours.
- 1.5 hours to prepare ECF filings of Affidavits of Service of Process on defendants and research of the Eastern District court rules and the district judges rules. This is repetitive as the attorneys attributed .7 hours to reviewing affidavits of service, the individual judge's rules, and filing the affidavits on ECF. Accordingly, this

time is reduced to .5 hours.

Accordingly, it is respectfully recommended that plaintiffs should be awarded $8,388.50[5] in attorney's fees.[6]

B.    Costs

Plaintiffs seek to recover costs related to litigating this action. Specifically, plaintiffs seek $817.63 in costs, which includes $350 for filing the complaint, $245 for service of process, and $ 222.63 in additional expenses such as photocopying, postage, and computer research. Dell Aff. ¶ 76. These amounts are reasonable. See Finkel v. Rico Elec., Inc., No. 07-CV-2145, 2009 WL 3367057, at *28 (Gold, M.J.) (awarding $931.46 in costs for filing, service, postage, and photocopying in ERISA default action). Accordingly, it is respectfully recommended that plaintiffs should be awarded $817.63 in costs.

C.    Audit Fees

Plaintiffs also seek to recover $1,725 in audit fees for conducting the audit of defendants' business records dating from July 1, 2006 through June 30, 2008. Section 502 of ERISA provides that the Court may award "such other legal and equitable relief as [it] deems appropriate." 29 U.S.C. § 1132(g)(2)(E). Under this provision, courts have awarded audit fees to plaintiffs. See Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp., No. 08-CV-116, 2009 WL 2461738, at *11 (E.D.N.Y. June 30, 2009) (Gold, M.J.); King v. JCS Enters., 325 F. Supp. 2d 162, 172 (E.D.N.Y. 2004). Plaintiffs have submitted

---

[5] This amount represents the sum of Mr. O'Hara's fee ($225/hour x .4 hours), Ms. Dell's fee ($225/hour x 10.4 hours), Ms. Dubuss's fee ($165 x 25.3 hours) and the paralegals' fee ($80/hour x 22.3 hours).

[6] It is not possible to separate the work performed for claims made on behalf of Local 1 versus the Funds. See Manhattan Plumbing Corp., 2010 WL 456870, at * 3 n.3 (impossible to apportion fees and costs attributable only to Local 1 Funds in ERISA default case). Accordingly, Krulasik is liable for the entire award. See generally Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996) ("Where the district court determines that the successful and unsuccessful claims are inextricably interwined and involve a common core of facts … it is not an abuse of discretion for the court to award the entire fee.").

the audit report, supporting schedules, and the cost of audit, which the Court finds to be reasonable. Accordingly, it is respectfully recommended that plaintiffs should be awarded $1,725 in audit fees.

V.     Injunctive Relief

Finally, plaintiffs seek an injunction requiring Marble Unique Corp. to produce its books and records for an audit and to submit all outstanding remittance reports, contributions, dues, and assessments within 15 days of judgment and to submit these items "timely in the future." Dell Aff. ¶¶ 83, 85, and Conclusion. Plaintiffs assert that Marble Unique Corp. "failed to comply with requests for a supplemental audit of Marble Unique Corp. for the period July 1, 2008 to date and continuing throughout the pendency of this action." Compl. ¶ 53. For the reasons set forth below, I respectfully recommend that plaintiffs' request for injunctive relief should be granted in part and denied in part.

The Court "may issue an injunction on a motion for default judgment upon a showing by the moving party that he is entitled to injunctive relief under the applicable statute, and that he meets the prerequisites for the issuance of an injunction." Gesauldi v. MBM Indus. Inc., No. 10-CV-2607, 2010 WL 3724348, at * 3 (Cogan, J.). "[I]njunctive relief is generally appropriate only when there is an inadequate remedy at law and irreparable harm will result if the relief is not granted." Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103 (2d Cir. 2005). However, the Second Circuit has held that "serious misconduct that violates [ERISA] obligations is sufficient grounds for a permanent injunction." Beck v. Livering, 947 F.2d 639, 641 (2d Cir. 1991). See also New York State Teamsters Conference Pension & Retirement Fund v. Boening Bros., Inc., 92 F.3d 127 (2d Cir. 1996) (affirming injunction ordering defendant to submit to an audit as required under a CBA).

ERISA provides that the Court may award "such other legal and equitable relief as [it] deems appropriate" in an action for nonpayment of employee contributions. 29 U.S.C. § 1132(g)(2)(E). "Such relief may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its records." A.G.I., Inc., 2005 WL 1565831, at * 4. The instant CBA expressly requires defendants to timely submit to remittance reports, authorizes plaintiffs to examine defendants' books and records, and requires defendants to produce its books and records for inspection and audit. Sullivan Aff., Ex. A & B, at Art. XV, § 7. Thus, plaintiffs are entitled to an injunction under the applicable statute.

Where, as here, "defendant has defaulted and has further refused to submit to the requested audit, plaintiffs have provided the Court with sufficient evidence that defendant intends to frustrate any judgment … or show contempt for the judicial process to satisfy the requirements entry of an injunction." La Barbera v. Fed. Metal & Glass Corp., 666 F. Supp. 2d 341, 350 (E.D.N.Y. 2009) (Pollak, M.J.) (internal quotation marks omitted). Faced with recalcitrant ERISA defendants, numerous courts have granted an injunction requiring an employer, who both failed to make contributions and cooperate with an audit, to submit to a CBA-required audit covering a specific period of time. Id. See also e.g., Dana Restoration Inc., 2010 WL 6267657, at * 14; Duffy v. Modern Concrete Corp., No. 07-CV-962, 2008 WL 822111, at * 4 (E.D.N.Y. Mar. 10, 2008) (Tomlinson, M.J.); Lanzafame v. Toquir Contracting, Inc., 545 F. Supp. 2d 255, 259 (E.D.N.Y. 2007); Lanzafame v. L&M Larjo Co., No. 03-CV-3640, 2006 WL 2795348, at * 9 (E.D.N.Y. Sept. 26, 2006) (Matsumoto, J.); Mason Tenders Distr. Council Welfare Fund v. Bold Constr. Co., No. 01-CV-641, 2002 WL 1788024, at * 3 (S.D.N.Y. Aug. 1, 2002) (Swain, J.). On this motion, I must accept as true plaintiffs' allegations

that they repeatedly requested and Marble Unique Corp. refused to submit to an audit of its books and records for the period covering July 1, 2008 to present.  See Dana Restoration Inc., 2010 WL 6267657, at * 14.  Accordingly, I respectfully recommend that plaintiffs should be granted an injunction requiring Marble Unique Corp. to produce all books and records from July 1, 2008 to the date of judgment for an audit by plaintiffs' designated auditor within 15 days of the entry of final judgment.  Following the audit, plaintiffs should be permitted to move to reopen this case to seek an amended judgment against defendants upon discovery of any unpaid contributions, dues and assessments, interest, liquidated damages, and/or audit costs.

In contrast, plaintiffs have not demonstrated that they lack an adequate remedy at law or will suffer irreparable harm absent an injunction requiring defendants to submit all outstanding remittance reports, dues, and assessments within 15 days and enjoining defendants from failing to do so in the future.   This request should be denied because (a) "monetary damages provide adequate remedies in the event that defendants commit similar violations in the future," and (b) "there is no evidence that the violations are continuing or that monetary damages are insufficient to deter future conduct."  L&M Larjo Co., 2006 WL 2795348, at * 9.  There is also no evidence that plaintiffs will be unable to collect on the instant judgment.  See MBM Indus. Inc., 2010 WL 3724348, at * 3 (denying injunctive relief where there was no evidence that "defendants continue to shirk their obligations under the collective bargaining agreement" or that the judgment would be returned unexecuted).

For these reasons, I respectfully recommend that plaintiffs' request for injunctive relief should be granted only with respect to their request to compel Marble Unique Corp. to submit to an audit within 15 days of the entry of judgment.  I also recommend that following the audit, plaintiffs should be permitted to move to reopen this case to seek an amended judgment against

defendants upon discovery of any further unpaid contributions, dues and assessments, interest, liquidated damages, and/or audit costs.

CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted and that a default judgment should be entered against defendant Marble Unique Corp. for: $86,337.14 in unpaid contributions; $14,971.98 in interest on unpaid contributions; $17,267.43 in liquidated damages; $6,560.66 in unpaid dues and assessments; $1,089.38 in interest on unpaid dues and assessments; $8,388.50 in attorney's fees; $817.63 in costs; and $1,725.00 in audit fees.    I also recommend that plaintiffs' request for injunctive relief should be granted only to the extent that Marble Unique Corp. should be required to produce all books and records from July 1, 2008 through the date of judgment for an audit by plaintiffs' designated auditor within 15 days of the entry of final judgment.    The remainder of plaintiffs' requests for injunctive relief should be denied.    Following the audit, plaintiffs should be permitted to move to reopen this case to seek an amended judgment against defendants upon discovery of any unpaid contributions, dues and assessments, interest, liquidated damages, and/or audit costs.    Finally, I recommend that judgment should be entered individually against Miroslaw Krulasik, in his capacity as a fiduciary for the unpaid contributions, interest on unpaid contributions, liquidated damages, and attorney's fees and costs. Plaintiffs are hereby ordered to serve a copy of this Report upon defendants at their last known address and to file proof of service with the Court.

FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file objections.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections must be made within the fourteen day period.  Failure to file a timely objection to this Report waives any further judicial review.  Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  August 30, 2011
            Brooklyn, New York